No. 18-55474, No. 18-55475, No. 18-55476

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**CENTER FOR BIOLOGICAL DIVERSITY, et al., DEFENDERS OF WILDLIFE, a non-profit conservation organization; et al., PEOPLE OF THE STATE OF CALIFORNIA, by and through Xavier Becerra, Attorney General and CALIFORNIA COASTAL COMMISSION**

*Plaintiffs-Appellants*,

v.

**UNITED STATES DEPARTMENT OF HOMELAND SECURITY; et al.,**

*Defendants-Appellees*.

On Appeal from the United States District Court for the Southern District of California, San Diego Division, Case Nos. 3:17-cv-01215-GPC-WVG; 3:17-cv-01873-GPC-WVG; 3:17-cv-01911-GPC-WVG
The Honorable Gonzalo Curiel, Judge

**APPELLANTS' REPLY BRIEF**

XAVIER BECERRA
Attorney General of California
ROBERT W. BYRNE
Senior Assistant Attorney General
EDWARD H. OCHOA (SBN 144842)
MICHAEL P. CAYABAN (SBN 179252)
DAVID G. ALDERSON (SBN 231597)
Supervising Deputy Attorneys General
JOHN APPELBAUM (SBN 149643)
NOAH GOLDEN-KRASNER (SBN 217556)
JANELLE M. SMITH (SBN 231801)
BAINE P. KERR (SBN 265894)
JESSICA B. STROBEL (SBN 280361)
JULIA FORGIE (SBN 304701)
Deputy Attorneys General
  600 West Broadway, Suite 1800
  San Diego, CA  92101
  Telephone: (619) 738-9313
  Fax: (619) 645-2271
  Email:  mike.cayaban@doj.ca.gov
*Attorneys for California Plaintiffs-Appellants*

*(additional counsel on signature page)*

# TABLE OF CONTENTS

**Page**

Introduction .......................................................................................... 1

Argument .............................................................................................. 1

I.    Section 102(C)(2)'S Jurisdictional Bars Do Not Apply in This Appeal ................................................................................ 1

    A.    Section 102(c)(2)(A)'s Jurisdictional Bar of Non-Constitutional Claims Does Not Apply to the Independent, Predicate Legal Question of Whether DHS Has Authority to Build the San Diego, Calexico and Prototype Projects ................................... 2

    B.    Section 102(c)(2)(C)'s Jurisdictional Bar of Circuit Court Review Does Not Apply to the Independent, Predicate Legal Question of Whether DHS Has the Authority to Build the San Diego, Calexico and Prototype Projects ........................................................... 9

II.    DHS's Reliance on the Administrative Procedure Act (APA) to Bar or Limit This Court's Review Is Misplaced ..... 14

    A.    Section 701 of the APA Does Not Bar Review of DHS's Actions ............................................................. 14

    B.    DHS's Statutory Interpretations Are Not Entitled to Chevron Deference Because DHS Did Not Speak with the Force of Law ........................................ 15

III.    The Secretary's Section 102(C)(1) Authority to Waive Laws to Expedite Border Construction Has Expired .............. 18

    A.    The Secretary's Authority to Expedite the Construction of Barriers Expired Pursuant to 102(b)(1)(B) ................................................................. 18

    B.    DHS's Authority to Expedite the Construction of Additional Barriers Expired with the Fulfillment of its Obligations Under Section 102(b)(1)(A) ................. 24

i

**TABLE OF CONTENTS**
**(continued)**

**Page**

IV. DHS's San Diego, Calexico and Prototype Projects Are Not Authorized by Section 102 .............................................. 25

    A. Section 102(a) Is Limited to the Installation of Additional Barriers; DHS's Replacement Projects Are Not Authorized ...................................................... 25

    B. DHS's San Diego, Calexico and Prototype Projects Are Not Located in "Areas of High Illegal Entry" Within the Meaning of Section 102(a) ........................ 27

V. Even Under the Most Stringent Standard, the Secretary Acted Ultra Vires in Issuing the Waivers .............................. 30

VI. DHS Cannot Meet Its Burden of Proving Its Affirmative Defense to Plaintiffs' Independent Claims Under NEPA and CZMA Because It Cannot Prove the Predicate Facts Necessary for a Waiver Under Section 102 ........................... 34

Conclusion ..................................................................................... 39

Statement of Related Cases ........................................................... 41

Certificate of Compliance ............................................................. 43

ii

# TABLE OF AUTHORITIES

**Page**

**CASES**

*A. Singh v. Gonzalez*
499 F.3d 969 (9th Cir. 2007) .............................................................. 6, 12

*Abbot Labs. v. Gardner*
387 U.S. 136 (1967)....................................................................................9

*Aguilar v. U.S. Immigration & Customs Enforcement Div.*
510 F.3d 1 (1st Cir. 2007)............................................................... 13

*Barlow v. Collins*
397 U.S. 159 (1970)............................................................... 2, 9

*Bowen v. Georgetown University Hospital*
488 U.S. 204 (1988)....................................................... 1, 17, 18

*Cassas-Castrillon v. Department of Homeland Security*
535 F.3d 942 (9th Cir. 2008) ............................................................ 6, 12

*Chamber of Commerce of U.S. v. Reich*
74 F.3d 1322 (D.C. Cir. 1996)............................................................ 33

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*
467 U.S. 837 (1984)....................................................... 15, 16, 17

*Dart v. United States*
848 F.2d 217 (D.C. Cir. 1988).............................................................. 31

*Davis v. Michigan Dept. of Treasury*
489 U.S. 803 (1989).............................................................. 10

*Duncan v. Walker*
533 U.S. 167 (2001)........................................................... 21

iii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Flores-Miramontes v. INS*
212 F.3d 1133 (9th Cir. 2000) ........................................................ 4, 5, 6

*Flores-Torres v. Mukasey*
548 F.3d 708 (9th Cir. 2008) ............................................................. 6, 12

*Gephardt v. Nielsen*
879 F.3d 980 (9th Cir. 2018) ............................................................. 6, 12

*Hawaii v. Trump*
878 F.3d 662 (9th Cir. 2017) .................................................................. 33

*International Brotherhood of Teamsters v. U.S. Department of Transportation*
861 F.3d 944 (9th Cir. 2017) ...................................................................2

*J.E.F.M. v. Lynch*
837 F.3d 1026 (9th Cir. 2016) ........................................................... 6, 12

*Kanne v. Connecticut Gen. Life Ins. Co.*
867 F.2d 489 (9th Cir. 1988) ................................................................. 35

*Leedom v. Kyne*
358 U.S. 184 (1958) ................................................................... 31, 32, 33

*Louisiana Pub. Service Comm'n v. FCC*
476 U.S. 355 (1986) .................................................................................1

*Meacham v. Knolls Atomic Power Lab.*
554 U.S. 84 (2008) ................................................................................ 34

*Michigan v. EPA*
268 F.3d 1075 (D.C. Cir. 2001) ........................................................ 1, 18

*Pacific Maritime Ass'n v. National Labor Relations Bd.*
827 F.3d 1203 (9th Cir. 2016) ............................................................... 31

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Price v. Stevedoring Services of America*
  697 F.3d 820 (9th Cir. 2012) ........................................................ 16, 17, 18

*Railway Labor Executives' Ass'n v. National Mediation Bd.*
  29 F.3d 655 (D.C. Cir. 1994) (en banc)................................................. 31, 33

*Singh v. Holder*
  638 F.3d 1196 (9th Cir. 2011) ............................................................ 5, 7

*Staacke v. U.S. Sec'y of Labor*
  841 F.2d 278 (9th Cir. 1988) ............................................................ *passim*

*Stone v. INS*
  514 U.S. 386 (1995)........................................................................... 19

*United States v. Mead Corp.*
  533 U.S. 218 (2001)......................................................................... 2, 16

*Valdivia v. Gonzales*
  423 F.3d 1144 (10th Cir. 2005) ........................................................... 8, 17

**STATUTES**

5 U.S.C.
  § 701 ..................................................................................... 14, 15
  § 701(a)(2) ................................................................................. 14
  § 706(2)(A) .................................................................................. 2
  § 706(2)(C) .................................................................................. 2

8 U.S.C.
  § 1103(a)(5) ................................................................................. 7
  § 1103 note ("Section 102") ........................................................ *passim*

Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* ......................... *passim*

Coastal Zone Management Act, 16 U.S.C. § 1461, *et seq.* ................... *passim*

v

## TABLE OF AUTHORITIES
### (continued)

**Page**

Department of Homeland Security Appropriations Act of 2018
Pub. L. 115-141, Div. F, Sec. 230(a)(1) .................................................. 39

Illegal Immigration Reform and Immigrant Responsibility Act
of 1996 Pub. L. 104–208 .............................................................................3

National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*.............. *passim*

**OTHER AUTHORITIES**

H.R. Rep. No. 109-72 (2005) ....................................................................... 13

## INTRODUCTION

Plaintiffs-Appellants[1] submit the following Reply to Defendants-Appellees'[2] Brief for Appellees ("Answering Brief" or "AB").

## ARGUMENT

### I.   SECTION 102(C)(2)'S JURISDICTIONAL BARS DO NOT APPLY IN THIS APPEAL

An inquiry regarding an agency decision or action must begin with the presumption that an administrative agency's power to act is limited to the authority delegated to it by Congress. *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208 (1988); *Louisiana Pub. Service Comm'n v. FCC*, 476 U.S. 355, 374 (1986). DHS has "no constitutional or common law existence or authority, but only those authorities conferred upon [it] by Congress." *Michigan v. EPA*, 268 F.3d 1075, 1081 (D.C. Cir. 2001).

In this case, the district court applied the incorrect Supreme Court and Ninth Circuit standard of review. This Court must first determine whether

---

[1] Plaintiffs-Appellants (collectively, "Plaintiffs") include: 1) the People of the State of California, by and through California Attorney General Xavier Becerra, and the California Coastal Commission (collectively "California"); 2) the Center for Biological Diversity; and, 3) the Defenders of Wildlife, the Sierra Club, and the Animal Legal Defense Fund.

[2] Defendants-Appellees (collectively, "DHS") include the following parties: the United States of America; the U.S. Department of Homeland Security; U.S. Customs and Border Protection; Secretary Kirsten Nielsen, in her official capacity; and, Kevin K. McAleenan, in his official capacity.

Congress has delegated legal authority to DHS to take the disputed action. *United States v. Mead Corp.*, 533 U.S. 218, 229-230 (2001). And since this appeal concerns DHS's authority to build barriers that are not subject to a jurisdictional bar, the correct standard the district court should have followed is that courts must "set aside final agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' [5 U.S.C.] § 706(2)(A), or [is] 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.'" 5 U.S.C. § 706(2)(C). *International Brotherhood of Teamsters v. U.S. Department of Transportation*, 861 F.3d 944, 951-952 (9th Cir. 2017).

## A. Section 102(c)(2)(A)'s Jurisdictional Bar of Non-Constitutional Claims Does Not Apply to the Independent, Predicate Legal Question of Whether DHS Has Authority to Build the San Diego, Calexico and Prototype Projects

As DHS acknowledges, "judicial review of [] administrative action is the rule, and non-reviewability an exception which must be demonstrated… [by] 'clear and convincing evidence'." *Barlow v. Collins*, 397 U.S. 159, 166-67 (1970) (citing *Abbot Labs. v. Gardner*, 387 U.S. 136, 141 (1967)). Despite this, DHS maintains that the jurisdictional bar in Section 102(c) applies to the causes of action at issue in this appeal.

2

DHS argues that "the only predicate legal questions here are whether the Secretary invoked Section 102(c)(1)[3] to waive laws, and whether plaintiffs' claims arise out of that waiver (or actions taken pursuant to it)." AB 25. DHS is wrong.

Here, the predicate legal question is whether DHS has the authority to build the San Diego, Calexico and Prototype Projects[4] in the first instance. A predicate legal question is a legal question that must be resolved **before** determining a second, separate question. The second question depends upon the resolution to the first question and not vice versa. While it is true that the second question, whether the Secretary can waive laws to build the barriers, depends upon the resolution of this predicate legal question, DHS's authority to build the barriers does not depend upon the Secretary's power to waive laws in order to build those barriers. Thus, not only is the question of whether DHS has the power to build a predicate

---

[3] Section 102, as used in this brief, refers to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act, (Pub. L. 104–208; 8 U.S.C. § 1103 note), as amended.

[4] The projects at issue include the following: 1) A border wall "prototype project" in San Diego County ("Prototype Project"); (2) the replacement of 14 miles of existing primary fencing in San Diego County; (3) the replacement of 14 miles of existing secondary fencing in San Diego County (collectively with the replacement of the primary fence in the same location, the "San Diego Project"); and, (4) the replacement of 3 miles of existing primary fencing near the City of Calexico ("Calexico Project").

question, it is an independent question that in no way arises from the waiver determination.

Plaintiffs' *ultra vires* claims are not, therefore, at bottom, claims challenging the waiver determination. Rather, they are allegations that DHS has exceeded its authority by building the San Diego, Calexico and Prototype Projects pursuant to Section 102, regardless of whether a waiver has been issued. While Plaintiffs do challenge the waivers under other claims for relief, and may seek certiorari in the Supreme Court to further pursue those claims, that does not make every cause of action and every allegation a challenge of the waivers.

Case law, including cases DHS cited, supports this position. For example, in *Flores-Miramontes*, this Court held that "[e]ven when the jurisdictional bar relating to criminal removal orders appears to apply, we have jurisdiction to determine whether a petitioner 'is an alien [removable] by reason of having been convicted of one of the enumerated offenses'." *Flores-Miramontes v. INS*, 212 F.3d 1133, 1135 (9th Cir. 2000) (citing *Magana–Pizano v. INS*, 200 F.3d 603, 607 (9th Cir. 1999)). Although Congress barred judicial review of any final order by INS, the court had jurisdiction to determine whether the individual committed the enumerated

4

criminal offense, as that was a predicate legal question. *Flores-Miramontes*, 212 F.3d at 1135.[5]

Further, DHS cites to cases that support *Flores-Miramontes* and Plaintiffs' reading of the jurisdictional bar. For example, in *Singh v. Holder*, 638 F.3d 1196, 1211-12 (9th Cir. 2011), this Court found that when a predicate question or cause of action can stand alone, it is not subject to a jurisdictional bar. In *Singh*, the court considered a habeas corpus petition that attempted to directly sidestep a jurisdictional bar to judicial review of an immigration removal order. Since the same or similar issues needed to be determined in each case and the habeas petition was a challenge to the removal decision, this Court easily found that the habeas petition was not independent of the removal proceeding. In reaching its decision, this Court reviewed numerous Ninth Circuit decisions involving jurisdictional bars and

---

[5] DHS attempts to discredit the applicability of *Flores-Miramontes* by calling the predicate question in that case a determination of whether jurisdiction exists and jurisdiction to determine jurisdiction. But it is a predicate question similar to the predicate question in our case. The INS issued a final order of removal against Flores-Miramontes. The statute barred any review of that final order. The court found that regardless of the jurisdictional bar it had jurisdiction to review the predicate question of whether Flores-Miramontes had committed one of the offenses that gave rise to the removal order in the first instance. The court's description of that exception to the jurisdictional bar, whether jurisdiction to determine jurisdiction or jurisdiction to determine a predicate question, is irrelevant to what the court actually did and what the law requires.

explained its reasoning for when a bar applies and when it does not. This Court found that in cases such as *Flores-Torres v. Mukasey*, 548 F.3d 708 (9th Cir. 2008), *Cassas-Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008) and *A. Singh v. Gonzalez*, 499 F.3d 969 (9th Cir. 2007), the operative question was whether the causes of action or challenges could stand alone, not just whether they were related, as DHS suggests.

A closer look at *Flores-Miramontes* and *Flores-Torres* supports this analysis. The predicate legal questions of whether the immigrant had committed one of the enumerated offenses (*Flores-Miramontes*), or whether the alleged immigrant was actually a United States citizen (*Flores-Torres*) were independent of the issues in related proceedings and were thus not barred by the statutory, jurisdictional bar. *See also, J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032-1033 (9th Cir. 2016) (court found that claims "arising from" a jurisdictional bar do not include claims that are independent of the questions at issue under that bar); and, *Gephardt v. Nielsen*, 879 F.3d 980, 984-985 (9th Cir. 2018) (court found that determining whether the Secretary's actions fall within his discretionary powers was a predicate legal question subject to review despite a jurisdictional bar, and was separate and apart from how the Secretary exercises discretion).

Here, an independent, predicate question also exists. Whether DHS has the power to build the San Diego, Calexico and Prototype Projects pursuant to Section 102, rather than using its authority under the Immigration and Nationality Act, §103(a)(5), 8 U.S.C. §1103(a)(5), is an independent question from whether the Secretary had the power to invoke a Section 102(c) waiver. This predicate question can be determined irrespective of whether the Secretary issued a waiver at all. Again, while Plaintiffs' constitutional claims in the proceeding below arise under the waiver determination, Plaintiffs' claims in this appeal arise under DHS's power to build the projects pursuant to Section 102 in the first instance.

According to DHS's strained construction, even challenges to whether the barriers are "in the vicinity of the United States border" would not be predicate legal questions and would be barred from review. Section 102(a). The Secretary might waive laws pursuant to Section 102(c)(1) to build a wall, or some other structure, 50 miles from the border, but courts would be barred from determining whether that was "in the vicinity of the United States border" because it arose from the waiver. A better reading is the test this Court articulated in *Singh*: do the same or similar issues need to be determined in each challenge or are the questions independent of one another? *Singh*, 638 F.3d at 1211-12. Under this test, the question of

7

whether a project is within DHS's power to construct under Section 102(a) or (b) is a predicate legal or factual question not subject to the jurisdictional bar in Section 102(c).

Further, we can presume that Congress knows how to style a clear jurisdictional bar. *Valdivia v. Gonzales*, 423 F.3d 1144, 1148 (10th Cir. 2005) (citing *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1143 (9th Cir. 2002)). Section 102(c)(2)(A) states that "[t]he district courts of the United States shall have exclusive jurisdiction to hear all causes or claims arising from any action undertaken, or any decision made, by the Secretary of Homeland Security pursuant to [the waiver authority in] *paragraph (1)*." (emphasis added). Congress could have easily drafted Section 102(c)(2)(A) to state the district courts of the United States shall have exclusive jurisdiction to hear all causes or claims arising from any action undertaken, or any decision made, by the Secretary of Homeland Security pursuant to *this statute*. Congress explicitly chose not to add that or similar language and instead limited the jurisdictional bar to all decisions by the Secretary to initiate a waiver, not the power of DHS to build the barriers in the first instance. We can infer, therefore, that Congress did not intend for the jurisdictional bar to apply to that predicate question, and the text in Section 102(c)(2)(A) certainly does not meet the "clear and convincing evidence"

8

standard for non-reviewability set out by the Supreme Court in *Barlow* and *Abbott Labs.* *Barlow*, 397 U.S. at 166-67; *Abbot Labs.*, 387 U.S. at 141.

DHS's interpretation of the statute also creates an unnecessary inconsistency. It would allow district court review of suits concerning the authority to build under Section 102(a) or (b) when the Secretary does not invoke a waiver, but it bars review of that same authority when the Secretary waives laws. This interpretation creates a perverse incentive for the Secretary to use the extraordinary power to waive legal requirements for all border infrastructure projects, if only to avoid court review of his or her authority to build the barriers in the first instance.

The more consistent way to read the statute is that the jurisdictional bar applies to the very paragraph of the statute it states that it applies to, Section 102(c)(1), and it was not intended to encompass the predicate grant of authority to build infrastructure along the border.

**B. Section 102(c)(2)(C)'s Jurisdictional Bar of Circuit Court Review Does Not Apply to the Independent, Predicate Legal Question of Whether DHS Has the Authority to Build the San Diego, Calexico and Prototype Projects**

DHS next argues that this Court lacks jurisdiction over Plaintiffs' statutory claims because of the appellate bar in Section 102(c)(2)(C). Again, DHS's argument necessarily assumes that Section 102(c)(2)(C)'s limitation

9

on appellate-court review for waiver decisions applies to DHS's compliance with the legal predicates outlined in Sections 102(a) and (b) for constructing border infrastructure. There is no legal support for DHS's position.

Section 102(c)(2)(C) states that a "final judgment, decree, or order of the district court may be reviewed only upon petition for a writ of certiorari to the Supreme Court of the United States." But that limitation pertains solely to legal challenges concerning the Secretary's waiver determination under Section 102(c). Section 102(c) is entitled "Waiver," and the text that follows in Section 102(c)(2)(C) demonstrates that the prohibition on appellate review relates only to claims that contest the Secretary's waiver decisions under that specific section.

Section 102's organization also illustrates that the appellate-review limitation in Section 102(c)(2)(C) only concerns the issues outlined in Section 102(c). *See Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989) (holding "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme").

Section 102(c)(2)(A), as discussed above, creates a statutory bar to review by the district court for "all causes or claims arising from any action undertaken, or any decision made, by the Secretary of Homeland Security

10

pursuant to" Section 102(c)(1), except for constitutional claims. A district court's review of the Secretary's waiver determinations, or the waiver provision's legality, is therefore limited to constitutional challenges. *See* Section 102(c)(2). Section 102(c)(2)(B) provides 60 days to file any challenge to the waiver determination. Section 102(c)(2)(C) then states that any review of the district court's judgment regarding the waiver determination may only be had "upon petition for a writ of certiorari to the Supreme Court." In this way, all the parts of Section 102(c) work together holistically and all relate to the waiver determination made pursuant to Section 102(c)(1) and referenced in Section 102(c)(2)(A).

DHS's argument regarding the appellate-review bar fails for the same reasons that their arguments regarding the statutory bar of non-constitutional claims fail. The predicate legal question -whether DHS has the power to build the San Diego, Calexico and Prototype Projects under Section 102- is independent from the question of whether the Secretary invoked a Section 102(c) waiver.

DHS correctly notes that the district court's order includes rulings on both Plaintiffs' statutory and constitutional claims. AB 28. But contrary to DHS's argument, it does not follow that Plaintiffs' statutory claims fall within Section 102(c)(2)(C)'s judicial-review provision. As discussed

11

above, Section 102(c)(2)(C)'s limitations on appellate-court review relate solely to claims premised on Section 102(c)'s requirements—not claims based on Sections 102(a) and 102(b).

Plaintiffs acknowledge that their constitutional challenges concerning the Secretary's waiver determination cannot be appealed to the Ninth Circuit. But Section 102(c) does not preclude circuit-court review of Plaintiffs' claims that DHS is acting outside of its delegated authority and that the San Diego, Calexico and Prototype Projects violate NEPA and the CZMA. Plaintiffs' statutory claims assert independent issues that are not covered by Section 102(c)'s jurisdictional bar because they do not "arise from" the Secretary's actions under Section 102(c). Consequently, Plaintiffs may seek this Court's review of their statutory claims. *Gephardt*, 879 F.3d at 984-985; *J.E.F.M.*, 837 F.3d at 1032-1033; *Flores-Torres*, 548 F.3d at 711-713; *Cassas-Castrillon*, 535 F.3d at 946; *A. Singh*, 499 F.3d at 975-980.

Plaintiffs offer a common-sense interpretation of the statute. In contrast, DHS's reading would create an odd result. According to DHS's interpretation, if the Secretary does not issue a waiver, circuit-court review would be available in suits questioning whether Section 102(a) or (b) authorizes the Secretary to build. But the very same questions would be

12

appealable only to the Supreme Court if the Secretary issued a waiver. This Court should avoid creating such an incongruous result.

Finally, Plaintiffs are not splitting review of their claims in a way that conflicts with Section 102's requirements. Rather, Plaintiffs have complied with Section 102 by limiting this appeal to their statutory claims, based on the appellate-court review limitation in Section 102(c)(2)(C). Section 102(c)'s legislative history further clarifies that the limits on judicial review apply only to the Secretary's waiver decisions or actions under Section 102(c), and not to whether the Secretary's actions meet Section 102(a) and (b)'s requirements. H.R. Rep No. 109-72 at 171-172. And unlike the plaintiffs in *Aguilar v. U.S. Immigration & Customs Enforcement Div.*, 510 F.3d 1, 9-10 (1st Cir. 2007), who in the court's view brought a "mélange" of claims to avoid a jurisdictional bar, here Plaintiffs' statutory claims are limited to violations of environmental statutes and to the Secretary's attempt to construct the San Diego, Calexico and Prototype Projects pursuant to a statute that does not apply. ER 108-109, 116, 122. Because Plaintiffs' statutory claims do not concern the Secretary's compliance with Section 102(c), this Court has jurisdiction over the present appeal.

13

## II. DHS's RELIANCE ON THE ADMINISTRATIVE PROCEDURE ACT (APA) TO BAR OR LIMIT THIS COURT'S REVIEW IS MISPLACED

### A. Section 701 of the APA Does Not Bar Review of DHS's Actions

DHS tries to avoid review of its statutory authority to build the San Diego, Calexico and Prototype Projects by arguing that section 701 of the APA bars review of the Secretary's waiver determinations. DHS also suggests that section 701 defeats Plaintiffs' statutory claims. AB 30-32. But those arguments again ignore that any project, for which a waiver is issued under Section 102(c), must first meet the requirements in Sections 102(a) and (b). Compliance with Section 102(a) and (b)'s requirements is mandatory, and the San Diego, Calexico and Prototype Projects do not comply with the legal predicates outlined in those sections.

The Secretary's discretion related to issuing waivers under Section 102(c) only arises for border-infrastructure projects that first meet the mandatory requirements in Sections 102(a) and 102(b). Section 701 of the APA only applies "to the extent that . . . agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). While Section 102(b) provided the Secretary with some discretion concerning where the 700 miles were constructed, compliance with the terms of Sections 102(a) and (b) that are at issue here is obligatory. The Secretary does not have discretion to

disregard terms that limit his or her authority to build. Accordingly, Section 701 of the APA does not bar review of Plaintiffs' statutory claims in this matter.

**B.   DHS's Statutory Interpretations Are Not Entitled to *Chevron* Deference Because DHS Did Not Speak with the Force of Law**

In its Answering Brief, DHS argues the Secretary's interpretation of Section 102 is entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). AB 36-37. DHS argues that *Chevron* deference applies because Congress expected the Secretary to speak with the force of law when "Congress expressly delegated to the Secretary the 'sole discretion' to determine whether a waiver is necessary to ensure expeditious construction of the barriers and roads under this section." AB 36-37. DHS again misunderstands what Plaintiffs are challenging here. Plaintiffs are not challenging the Secretary's waiver authority, which is expressly delegated to the Secretary. Rather, as stated above, Plaintiffs are challenging the DHS's authority to build the San Diego, Calexico and Prototype Projects pursuant to Sections 102(a) and (b). Congress did not delegate to the Secretary the power to expand the scope of construction authority it provided under Sections 102(a) and (b).

15

As Plaintiffs stated in their opening brief, here there are none of the ordinary indicia showing that the Secretary is speaking with the force of law. The Secretary engaged in none of the rigors of the Administrative Procedure Act, including public notice and comment or public hearings. *Mead Corp.*, 533 U.S. at 229-230; *Price v. Stevedoring Services of America*, 697 F.3d 820, 826 (9th Cir. 2012). The Secretary engaged in no rulemaking and provided no expert report. *Id.* Therefore, there is no indication from Congress that DHS's interpretations of Section 102(a) and (b) are subject to *Chevron* deference, and DHS did not engage in any procedures or provide expertise that would ordinarily be subject to deference.[6]

Here, the Secretary simply stated in the waiver determinations that Congress provided the Secretary with the power to build the San Diego, Calexico and Prototype Projects pursuant to Section 102. ER 283-87. DHS simply parroted the language of the statute. *Id.* Other than providing statistics to argue that certain areas are ones of "high illegal entry," DHS did

---

[6] DHS points out in the Answering Brief that public participation and rulemaking are not required for a court to give *Chevron* deference. Plaintiffs, however, are not suggesting that there is an absolute bar to *Chevron* deference when no rulemaking or public participation occurs, but are arguing that these are the ordinary indicia that show an agency is speaking with the force and effect of law, and is therefore entitled to deference. DHS has not shown any reason to ignore its lack of engagement here in the types of procedures that give rise to *Chevron* deference.

not engage in any analysis or provide expertise suggesting its decision is entitled to deference.

As this Court has stated, the Supreme Court in "*Gonzales* explained that an agency does not acquire 'special authority'" when it "merely paraphrases statutory language." *Price*, 697 F.3d at 829. "In other words, an agency presumably undertakes careful deliberation about how best to effectuate statutory policies during the demanding process of promulgating regulations that go beyond simply restating a statute; through that process, it takes pains to understand and effectuate the congressional intent underlying the statute." *Id*. (citing *Chevron*, 467 U.S. at 865). In the waivers, DHS simply paraphrases the statute and declares that Congress provided it with the authority to build these projects. ER 283-287. This type of declaration should not be entitled to *Chevron* deference.

This case is more analogous to an instance where an agency's counsel engages in *post hoc* rationalizations of agency orders, which the Supreme Court has stated are not entitled to any deference. *Bowen*, 488 U.S. at 212; *Price*, 697 F.3d at 826-829. DHS's waiver determinations reference Sections 102(a) and (b) as authority for the construction but do not provide any rationale for why those provisions apply to the projects identified. It is only defense counsel that has provided any such rationale, especially with

17

respect to Section 102(b).  This is exactly the type of *post hoc* rationalization *Bowen* sought to avoid.

As established in *Price* and *Michigan*, the correct approach the district court should have taken is to first determine whether DHS acted outside the scope of its delegated statutory authority when authorizing the construction under Section 102(a) or (b), with no deference to DHS's construction of the statute.  *Michigan*, 268 F.3d at 1081; *Price*, 697 F.3d at 826.

### III.  THE SECRETARY'S SECTION 102(C)(1) AUTHORITY TO WAIVE LAWS TO EXPEDITE BORDER CONSTRUCTION HAS EXPIRED

#### A.    The Secretary's Authority to Expedite the Construction of Barriers Expired Pursuant to 102(b)(1)(B)

Once the jurisdictional bars and agency deference are removed, DHS's construction of the statute boils down to one argument.  DHS maintains that the authority in Section 102(a) allows it to build any and all border infrastructure projects in perpetuity using the authority outlined in Section 102.  AB 42-52.  However, the structure of the statute, its purpose and legislative history, as well as legal precedent all demonstrate that the statutory authority to build barriers under Section 102 expired when DHS completed its statutory mandate pursuant to Section 102(b).

To avoid this result, DHS contends that Section 102(a) authorizes it to build the barriers at issue in this case, and argues that Section 102(a)

18

contains no time limit for completing construction and allows the building of unlimited mileage along the border. AB 39. But DHS's myopic reading of this "general" provision ignores the clear limitations provided by Congress in Section 102(b), which restrict building authority to the 700-minimum miles already completed by DHS, and which limit the authority to expeditiously build and complete work in "priority areas" by December 2008. Section 102(b)(1)(A) and (B). DHS also ignores the interdependence between subdivisions (a) and (b) intended by Congress.

Section 102(b)(1)(A) begins with the phrase, "[i]n carrying out subsection (a)," referring back to the "general" construction provisions in Section 102(a). If, as DHS contends, Section 102(a) provides the Secretary with independent construction authority that is completely severed from subdivision (b), Congress would have omitted those words (and others discussed below) expressly establishing the interrelationship between those two subdivisions. Congress did not do so and DHS's interpretation would impermissibly render those words – "[i]n carrying-out subsection (a)" - superfluous. *Stone v. INS*, 514 U.S. 386, 397 (1995). Consequently, DHS's proposed interpretation should be rejected.

In attempting to avoid the application of Section 102(b), DHS incorrectly contends that the December 2008 deadline stated in Section

19

102(b)(1)(B) is "unambiguously limited to the specific construction referenced in 'clause (i)' of § 102(b)(1)(B)." AB 40. But as noted above, DHS's contention fails to acknowledge the expressly stated interconnection between subdivisions (a) and (b), in which (b) carries out Congress's instructions that impose, among other requirements, a temporal limitation for implementing the general construction provisions in subdivision (a).

DHS also attempts to avoid the principle of statutory construction that the "specific governs the general." DHS argues that the general construction authority in Section 102(a) exists independently from other provisions, and therefore, the limitations in subdivision (b) do not apply. AB at 42. While this argument favors DHS's current litigation position, because it allows DHS to avoid specific provisions that imposed a deadline to identify and construct on an expedited basis, DHS previously recognized the applicability of subdivision (b) when the Secretary relied on it to authorize the subject projects described in the waivers. ER 283-86. DHS also fails to explain *why* the more specific provisions of subdivision (b) do not apply. Plaintiffs' interpretation of Section 102 is consistent with the express words of the entire statute and with DHS's pre-litigation position concerning the provisions governing its authority to build.

20

The Secretary's waiver authority in Section 102(c) is also expressly limited by the provisions in Section 102(b) pertaining to the expeditious construction of border infrastructure in priority areas as designated by the Secretary. Section 102(c)(1) plainly states the Secretary may waive "all legal requirements," but only as "necessary to ensure *expeditious construction* . . . ." (emphasis added). The words "expeditious construction" relate back to Section 102(b)(1)(B), which required construction to be completed in "priority areas" by December 2008. Congress expressed its intent for the Secretary to build "priority areas" of at least 370 miles within one year, and facilitated this directive by authorizing the Secretary to waive "all legal requirements" to expedite construction and meet the 2008 deadline.

In response, DHS notes that the phrase "expeditious construction" is not explicitly used in Section 102(b), and therefore argues that this semantic difference precludes application of the provisions in subdivision (b) applicable to construction activities in "priority areas" as designated by the Secretary. AB 45. But this limited interpretation of Section 102 ignores basic principles of statutory construction which require courts to "give effect" to every word in a statute. *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (holding that court's duty is to "give effect" to "every clause and

21

word of a statute" to avoid surplusage). In applying this statutory construction principle, a correct and consistent reading of the statute means that in using the phrase "expeditious construction" in Section 102(c)(1), Congress intended to ensure that the Secretary had the requisite authority to "waive all laws" to expeditiously construct border infrastructure *in priority areas*. DHS's contrary reading would allow the Secretary to determine that *any* border construction, at *any* time, warrants the waiver of laws, even though Congress did not express that intent when it last amended Section 102. Furthermore, DHS's proposed interpretation would render the expiration of authority in Section 102(b)(2)(i) and the construction deadline in Section 102(b)(2)(ii) a nullity.

Significantly, Section 102(b)(1)(B) also uses the phrase "in carrying out this section" when referring to the Secretary's limited authority to identify and construct additional barriers and roads in priority areas expeditiously. This means that Section 102(b) applies to projects undertaken under Section 102(a), and demonstrates how Section 102(b)(1)(B) is related to Section 102(c), as both use the term "section" and demand expeditious construction of barriers. As DHS recognizes, "when Congress directs that a particular provision applies to actions 'under this section,' the import is that

22

*the provision applies to the entire section* rather than just 'a particular subsection or paragraph.'"  AB 43 (emphasis added).

In a further attempt to graft Section 102(c) onto more than just expeditious construction, DHS argues that Section 102(c)'s use of the terms "fencing" and "roads," and Section 102(b)(1)(B)'s use of just the term "fencing," implies that section 102(c) applies to Section 102(a) and not just Section 102(b).  That constricting interpretation of the authority to build in Section 102(b)(1)(B) is unnecessary and is at odds with DHS's own interpretation of the statute.

A better and more consistent reading is that the power to build barriers pursuant to Section 102(b)(1)(B) includes the implied power to build all infrastructure necessary to build those barriers, including roads, lighting, sensors and cameras.  For example, Section 102(a) includes the phrasing, "provide for the installation of additional physical barriers, roads, lighting, cameras, and sensors," not just fencing and roads, while Section 102(c), according to the DHS's reading, only applies to fencing and roads, not lighting, cameras and sensors.  DHS's reading would bar using the waiver when building lighting, cameras and sensors.  But each Secretary who has used the waiver has done so to build lighting, cameras and sensors.  ER 283-301.  The better reading of the statute is the reading Plaintiffs propose.  The

23

building of fencing in Section 102(b)(1)(B), and in Sections 102(b)(1)(A) and 102(a) if appropriate, includes constructing necessary infrastructure to support those fences, including roads, lighting, cameras and sensors.

Congress provided DHS with specific instructions on how to "carry-out" the terms of the entire statute and placed an express deadline on the Secretary's authority to identify and construct barriers on an expedited basis. Thus, the Secretary's power to expedite border infrastructure projects through the use of a waiver expired on December 31, 2008.

### B. DHS's Authority to Expedite the Construction of Additional Barriers Expired with the Fulfillment of its Obligations Under Section 102(b)(1)(A)

DHS no longer has authority to build pursuant to Section 102(b)(1)(A). In Section 102(b)(1)(A) DHS was provided authority to build 700 or more miles in areas where the fencing would be most practical and effective. Section 102(b)(1)(A). DHS has now completed 704 miles of barriers, including double and triple fencing. ER 109, 203, 207, OB 50-51. DHS has admitted it completed that goal, including constructing all barriers outlined in the previous waivers that Secretary Chertoff effectuated 10 years ago. *Id*. Having acknowledged that it has already fulfilled the requirements of Section 102(b)(1)(A), it is therefore not surprising that DHS now argues that Section 102(a) alone provides them with the authority it requires in this case.

24

*Id.*[7] Since DHS has completed its mandated construction and completed Congress's intended projects, it has accomplished its delegated task and its authority to construct under Section 102 no longer exists.

## IV. DHS'S SAN DIEGO, CALEXICO AND PROTOTYPE PROJECTS ARE NOT AUTHORIZED BY SECTION 102

### A. Section 102(a) Is Limited to the Installation of Additional Barriers; DHS's Replacement Projects Are Not Authorized

Even if this Court finds that DHS is authorized to build barriers under Section 102(a), DHS is still acting outside its statutory authority by building the San Diego, Calexico and Prototype Projects. In Section 102(a), Congress directed the Secretary to take "such actions as may be necessary to "install *additional* physical barriers" and roads along the border. DHS's replacement projects here are not adding to the total miles of fencing along the southwest border, as set forth in Section 102(b). They are simply projects to support existing infrastructure.

---

[7] DHS states that Plaintiffs' argument accomplishes nothing if it just requires DHS to state that it is building pursuant to Section 102(b)(1)(A) and not Section 102(a). DHS miscomprehends the statute and Plaintiffs' argument. Section 102(b)(1)(A) sets forth a mandate for the Secretary to build at least 700 miles of barriers. DHS has stated it met this mandate by building 704 miles of fencing. Section 102(b)(1)(A) was not intended to apply to all 7,000 or more miles of the United States border.

25

DHS urges the Court to adopt a definition of "additional" that is inconsistent with the word's plain and ordinary meaning and is divorced from the statutory context in which the term is used. DHS's interpretation of Section 102 would give that agency unconditional and ongoing power to build new barriers, replace or maintain existing barriers, and waive any law it desires to build barriers along any border of the United States at any time. But the statute does not give DHS such boundless authority.

DHS contends "additional barriers" should be read to encompass any replacement fencing that is "taller," "stronger," or "better" than the existing barriers in the same location. AB 52-53. Congress did not, however, use any of those words to describe the type of fencing authorized under this statute. Instead, Congress directed the Secretary to "install additional barriers" and to carry out this task by adding fencing along at least 700 miles of the border.

Further, DHS erroneously asserts that by applying the ordinary and common-sense meaning of "additional" urged by Plaintiffs, DHS will be precluded from replacing barriers that degrade over time. AB 54-55. That is simply not the case. As noted above, DHS has historically relied on

26

authority independent of Section 102 to construct and maintain existing barriers along the border. ER 221.[8]

The phrase "install additional barriers" means the installation of barriers in areas where they did not previously exist. The words do not encompass the replacement of existing barriers such as DHS's replacement projects. Accordingly, DHS's fence replacement projects are not authorized by Section 102.

**B. DHS's San Diego, Calexico and Prototype Projects Are Not Located in "Areas of High Illegal Entry" Within the Meaning of Section 102(a)**

Section 102(a) does not permit the expedited construction of barriers across the entire southern border. The authority to build under Section 102(a) is limited to "areas of high illegal entry." As noted in Plaintiffs' opening papers, the best measure of what Congress considered "high" is to look at the Congressional response to sectors with differing levels of illegal entries when it enacted or amended Section 102. As noted in Plaintiff's

_____

[8] DHS also contends it should be allowed to repair portions of barriers damaged by vandalism or natural resources, and that such repairs might need to be expedited. However, the replacement or repair of small segments of fencing would rarely trigger environmental review. Moreover, this case does not involve a project limited to repairing a small segment of fencing. Rather, DHS seeks to replace miles of fencing that it has been contemplating replacing for over a decade.

27

opening brief, the sectors that include the San Diego and Calexico Projects can no longer be considered "areas of high illegal entry" within Section 102 because entries have dramatically dropped within those sectors. Further, unlike sectors with much higher illegal entries, Congress has never identified sectors with similar apprehension levels as areas of concern through its amendments to subsection (b).

DHS offers an interpretation of Section 102 that renders the phrase "areas of high illegal entry" meaningless. DHS asserts that the Secretary should be given "flexibility" in determining whether a particular area is a high illegal entry area, because Congress instructed DHS to install additional barriers with the objective of "operational control" of the border. AB 57. DHS contends Congress "understood that in determining whether or not an area had "high" illegal entry, the Secretary could account (among other things) for whether or not operational control has yet been achieved." *Id.* However, DHS also emphasizes that "operational control" is defined (in a separate provision) as "the prevention of *all* unlawful entries into the United States." AB 57. In other words, in DHS's view, it has free reign to construct barriers (and waive laws in order to do so) regardless of how many entries are occurring in the areas, so long as the Secretary is attempting to

28

eliminate *all* unlawful entries. This interpretation should be rejected because it renders the phrase "areas of high illegal entry" superfluous.

As an alternative argument, DHS contends the El Centro and San Diego sectors are "high" when compared to other border sectors.[9] But the record contradicts this argument. Between 2013-2015, the percentage of known illegal entries attributed to each of DHS's nine southwest border sectors were as follows:

| | |
|---|---|
| Rio Grande Valley | - 40% |
| Tucson | - 29% |
| Laredo | - 9% |
| **San Diego** | **- 7%** |
| El Paso | - 5% |
| Del Rio | - 4% |
| **El Centro** | **- 4%** |
| Yuma | - 1% |
| Big Bend | - 1% |

ER 207. In 2016, DHS reported similar apprehension data:

| | |
|---|---|
| Rio Grande Valley | - 45.7 % |
| Tucson | - 15.9 % |
| Laredo | - 8.9 % |

---

[9] DHS attempts to draw comparisons between the apprehension levels in all of the border sectors around the continental United States, including coastal sectors that do not share a land border with any other country. This comparison is misleading and irrelevant because Congress refers specifically to the "southwest border" in its instructions on carrying out subsection (a). The legislative history of Section 102, and its various amendments, further confirm that the statute pertains only to entries along the "southern" or "southwest border." SER 60, 63, 71, 73-74, 86-87.

29

| | |
|---|---|
| **San Diego** | **- 7.8 %** |
| El Paso | - 6.3 % |
| Del Rio | - 5.6% |
| **El Centro** | **- 4.8%** |
| Yuma | - 3.5% |
| Big Bend | - 1.6 % |

ER 192.  These undisputed facts establish that the El Centro and San Diego sectors are not "areas of high illegal entry" when compared to other southwest border sectors.

If Congress sought to authorize the expedited construction of barriers along the entire southwest border, or the entire United States border, without regard to whether the construction was taking place in an area of high illegal entry, it would have done so expressly.  Congress certainly would not have included the phrase "areas of high illegal entry" or identified specific mileage requirements in the statute.  DHS's San Diego, Calexico and Prototype Projects, therefore, are not authorized by Section 102.

## V.  EVEN UNDER THE MOST STRINGENT STANDARD, THE SECRETARY ACTED *ULTRA VIRES* IN ISSUING THE WAIVERS

DHS asserts that *Kyne's* "clear and mandatory language … [is] the appropriate limitation on the narrow review of ultra vires claims."  AB 34. Even assuming this is the appropriate standard, "[w]hen an executive acts

30

*ultra vires*, courts are normally available to reestablish the limits on his authority." *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988).

Accordingly, even when applying the *Kyne* "clear and mandatory" standard for demonstrating *ultra vires* action, courts typically conduct a searching inquiry, employing traditional tools of statutory interpretation and considering the statute's text, structure, legislative history, and prior executive practice. *See Railway Labor Executives' Ass'n v. National Mediation Bd.*, 29 F.3d 655, 664 (D.C. Cir. 1994) (en banc) ("We need look no further than the language of [the authority provision], the structure of the Act, and its legislative history to determine that these proposed procedures are not only unprecedented, but [are] legally insupportable as well"); *Pacific Maritime Ass'n v. National Labor Relations Bd.*, 827 F.3d 1203, 1208-1211 (9th Cir. 2016) (conducting detailed analysis of statutory provision, but declining to rule on the *ultra vires* issue because plaintiff had an "alternative path to seeking review" of the Board's decision); *Dart*, 848 F.2d 217, 228-30 (*ultra vires* review examined statutory language, structure, and Congressional history). In this case, that searching inquiry demonstrates that issuance of the waivers was *ultra vires* to the DHS Secretary's authority under Section 102.

31

DHS cites the Ninth Circuit's rejection of an *ultra vires* claim in *Staacke v. U.S. Sec'y of Labor*, 841 F.2d 278 (9th Cir. 1988), to argue that the *Kyne* "clear and mandatory standard" cannot be met in this case. This Court should decline DHS's invitation to simply adopt one sentence from *Staacke* as the governing standard in all *ultra vires* cases. The district court below relied heavily on a standard it suggested exists in *Staacke* and that applies to all *ultra vires* questions before this Court when a statutory bar is at issue. This purported standard is *even* more severe than *Kyne*, as it provides that where a "statute is capable of two plausible interpretations, the Secretary's decision to adopt one interpretation over the other cannot constitute a violation of the clear statutory mandate." *Id*. at 282.

But *Staacke* is not, at bottom, a case where the agency or Secretary is alleged to have acted beyond its authority. The plaintiff in *Staacke* was a dockworker who sued the Secretary of Labor concerning a claim for disability benefits. *Id.* at 280. In *Staacke*, the plaintiff argued that the Secretary acted within his delegated powers but erred in deciding Staacke's individual benefits claim. *Id*. The statutory bar on court review was thus clear, the Secretary was acting within his statutory authority, and Staacke was simply challenging the Secretary's benefits decision. *Id.* at 280-82.

32

The *Staacke* court even states as much when in it explains how its holding differs from *Kyne*. It stated that *Kyne*, unlike the case before it, was "'not one to 'review' ... a decision of the Board made within its jurisdiction,' but rather 'one to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act.'" *Staacke*, 841 F.2d at 282 (citing *Leedom v. Kyne*, 358 U.S. 184, 188 (1958)).

This appeal concerns DHS's decision to build barriers "in excess of its delegated powers and contrary to a specific prohibition in the Act." *Kyne*, 358 U.S. at 188. Thus, *Staacke's* more severe standard, presented by DHS and adopted by the district court, is not the proper standard. Plaintiffs submit that this Court should instead consider the text, structure, and legislative history of Section 102 to determine congressional intent. *Railway Labor Executives' Ass'n*, 29 F.3d at 664; *see also Hawaii v. Trump*, 878 F.3d 662 (9th Cir. 2017) (overturned on other grounds *Trump v. Hawaii*, 138 S. Ct. 2392, 2018 U.S. LEXIS 4026, *23-44 (June 26, 2018)); *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1327-28, 1332- 34, 1339 (D.C. Cir. 1996) (evaluating similar factors and holding executive order not supported by statutory authority was *ultra vires*). A close reading of the statute makes clear that DHS does not have the authority to build the San Diego, Calexico and Prototype Projects.

33

## VI. DHS CANNOT MEET ITS BURDEN OF PROVING ITS AFFIRMATIVE DEFENSE TO PLAINTIFFS' INDEPENDENT CLAIMS UNDER NEPA AND CZMA BECAUSE IT CANNOT PROVE THE PREDICATE FACTS NECESSARY FOR A WAIVER UNDER SECTION 102

Separate and apart from Plaintiffs' claims that DHS exceeded its authority to construct barriers under Section 102, California presented independent claims for relief under NEPA, CZMA and the APA. These claims encompass the planning and construction of the San Diego, Calexico and Prototype Projects, and the secondary fence project in the San Diego area. ER 175-178, 422-431, 433-435, 450-451, 461-463. In its motion for summary judgment, California presented unrebutted evidence that these projects triggered compliance with the environmental review/consistency determination requirements of NEPA and CZMA, and that DHS admitted it failed to comply with those statutes. ER 175-178, 302-346. The record also establishes that these on-going claims accrued prior to, and independent of, DHS's waiver determinations in August and September 2017. ER 253-287.

As noted in Plaintiffs' opening brief, DHS's reliance on the San Diego and Calexico waivers to excuse DHS from compliance with NEPA, CZMA and the APA constitutes an affirmative defense. And, as with any affirmative defense, the party asserting the defense bears the burden of persuasion regarding its applicability. *Meacham v. Knolls Atomic Power*

34

*Lab.*, 554 U.S. 84, 92-93 (2008) ("the burden of persuasion" falls on the party claiming an exemption from laws that would otherwise render its conduct unlawful); *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 492 n. 4 (9th Cir. 1988) (because the defendant's claim that the plaintiff's suit was preempted by a federal statute constituted an affirmative defense, the defendant bore the burden of proving the applicability of that statute).

Here, Section 102(c) authorizes the Secretary to waive legal requirements to expedite the "construction of the barriers and roads under this section." The Secretary's waiver authority, therefore, applies only to barriers and roads authorized under Section 102. Thus, to meet its burden of persuasion for its waiver defense, DHS bears the burden of proving that the fence replacement and prototype construction projects fall within Section 102(a) and (b), including that the projects are in areas of high illegal entry and are additional barriers.

DHS did not and cannot meet this burden. Here, the undisputed facts establish that DHS seeks to replace existing fences in San Diego and Calexico – not additional barriers that would add to the mileage totals referenced in Section 102(b). ER 253-287. Further, DHS cannot meet its burden of proof or persuasion with respect to the facts necessary to prove these are areas of high illegal entry. ER 163, 164, 179, 191. The district

35

court did not address the burden of proof and persuasion issue and did not delve deeply into DHS's claims of factual proof regarding areas of high illegal entry.

In its Answering Brief, DHS does not dispute that its waiver defense constitutes an affirmative defense to Plaintiffs' NEPA and CZMA claims. Nor does DHS cite a single case suggesting that it does not bear the burden of persuasion concerning that affirmative defense. Instead, DHS offers several arguments that invite this Court to ignore Plaintiffs' independent claims for relief under NEPA, CZMA and the APA, improperly shift the burden of persuasion concerning an affirmative defense to Plaintiffs, and impose Section 102's alleged jurisdictional bar without addressing whether the statute applied to the facts of this case.

For example, DHS attempts to merge Plaintiffs' claims, contending Plaintiffs are attempting to "escape the ultra vires standard by characterizing it as an affirmative defense." AB 35-36. This argument mischaracterizes Plaintiffs' arguments and ignores that this presents questions relating to Section 102's application in two contexts. The first is in the context of Plaintiffs' *ultra vires* claims. The second is through DHS's defense to Plaintiffs' independent claims for relief under NEPA, CZMA and the APA –

36

an affirmative defense dependent on the applicability of Section 102. ER 461-463.

DHS also contends "the legal question about the validity of the waivers is not subject to an evidentiary burden of proof." AB 60 n 20. As with most statutory defenses, however, Section 102 is dependent upon requisite facts that demonstrate the applicability of the statute – that the project pertains to the construction of "additional fencing" in areas of "high illegal entry."

Moreover, the district court's summary judgment decision highlights the fundamental flaw in DHS's argument that the burden of persuasion does not matter. The district court did not resolve questions of law concerning the meaning of terms and phrases in Section 102, but instead repeatedly noted Section 102's ambiguity and concluded that both sides offered "plausible" interpretations of the statute's key provisions. ER 45-50, 62-64. Focusing solely on Plaintiffs' *ultra vires* claims, the district court then imposed on Plaintiffs the burden of demonstrating a violation of the statute's clear and mandatory language. ER 45-50, 62-64. By failing to address them as separate claims for relief or acknowledge that DHS bore the burden of demonstrating its waiver defense, the district committed clear error with respect to California's NEPA, CZMA and APA claims.

37

DHS also contends Plaintiffs ignore Section 102(c)(2)'s jurisdictional bar and that the party invoking a district court's subject matter jurisdiction bears the burden of demonstrating that jurisdiction exists. AB 36. In the context of California's First and Second Claims for relief, however, California is invoking the Court's jurisdiction to consider claims under NEPA, CZMA and the APA. These claims accrued as early as March 2017, as DHS developed plans to replace fencing in areas containing sensitive environmental resources without conducting any form of public environmental review, and based on facts independent of DHS's waiver determinations. DHS must meet this initial burden of persuasion – the burden of proving that the statute is applicable – before the jurisdictional limitations of Section 102(c)(2) can be applied.[10]

---

[10] DHS's non-waiver arguments concerning the replacement of primary fencing (AB 60-61), which presuppose the validity of their affirmative defense, are misplaced. Contrary to DHS's arguments, Plaintiffs are not suggesting that the "waivers exclude pre-waiver planning activities." Plaintiffs contend that their First and Second Claims for Relief accrued in early 2017 and that DHS's liability is on-going. DHS's conduct, both before and after the waiver determinations, is unlawful and DHS cannot establish that Section 102 applies.

At pages 62 through 64 of its Answering Brief, DHS also argues that Plaintiffs' claims concerning the San Diego secondary fence replacement are premature and that California lacks standing. These arguments are disingenuous for several reasons. DHS published planning documents concerning this project in March 2017, constructed prototypes to determine

38

**CONCLUSION**

This Court has jurisdiction to consider Plaintiffs' non-constitutional claims, which present independent, predicate legal questions concerning the scope of Section 102(a) and (b) and whether those provisions authorize DHS to build the San Diego, Calexico and Prototype Projects. The authority to build expedited construction projects expired pursuant to the express terms of Section 102(b). DHS's projects also fail to satisfy Section 102(a)'s general requirements limiting DHS's authority to the installation of additional barriers in areas of high illegal entry. Finally, with respect to California's independent claims under NEPA and the CZMA, DHS cannot meet its burden of proof concerning the application of its waiver defense because its projects are not authorized under Section 102.

---

the project's design in the fall of 2017, and secured funding for this specific project in April 2018. ER 253, 256, 270; PUB. L. 115-141, Div. F, Sec. 230(a)(1). The undisputed record also establishes that California owns, manages and is financially responsible for property adjacent to this project. DHS also acknowledged Plaintiff California Coastal Commission has standing to enforce claims under CZMA. ER 342-346; Case No. 01215-GPC-WVG, Doc. 42, p. 15 of 49. The district court easily found that California has Article III standing to assert its claims and this fact was not credibly disputed.

Dated:  July 16, 2018

Respectfully submitted,

s/Brian Segee
Brian Segee
John Peter Rose
Center for Biological Diversity
660 South Figueroa St., St. 1000
Los Angeles, CA 90017
(805) 750-8852
(213) 785-5400

Brendan Cummings
Anchun Jean Su
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612
(510) 844-7100
*Attorneys for Center for Biological Diversity*

s/Anthony T. Eliseuson
Anthony T. Eliseuson
Animal Legal Defense Fund
150 South Wacker Drive
Chicago, IL 60606
(707) 795-2533

Sara K. Hanneken
Animal Legal Defense Fund
919 SW Taylor Street, $400
Portland, OR 97205
(707) 795-2533

SD2018301044
21179500.docx

Xavier Becerra
Attorney General of California
Robert W. Byrne
Senior Assistant Attorney General

s/Michael P. Cayaban
Michael P. Cayaban
Supervising Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA  92101
(619) 738-9313
*Attorneys for California*

s/Jason Rylander
Jason Rylander
Defenders of Wildlife
1130 17th Street, N.W.
Washington, D.C.
(202) 682-9400
*Attorneys for Defenders of Wildlife*

s/Gloria D. Smith
Gloria D. Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5532
*Attorneys for Sierra Club*

40

No. 18-55474, No. 18-55475, No. 18-55476

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**CENTER FOR BIOLOGICAL DIVERSITY, et al., DEFENDERS OF WILDLIFE, a non-profit conservation organization; et al., PEOPLE OF THE STATE OF CALIFORNIA, by and through Xavier Becerra, Attorney General and CALIFORNIA COASTAL COMMISSION**

*Plaintiffs-Appellants*,

v.

**UNITED STATES DEPARTMENT OF HOMELAND SECURITY; et al.,**

*Defendants-Appellees*.

**STATEMENT OF RELATED CASES**

To the best of our knowledge, there are no related cases.

Dated: July 16, 2018          Respectfully Submitted,

                               XAVIER BECERRA
                               Attorney General of California


                               s/MICHAEL P. CAYABAN
                               MICHAEL P. CAYABAN
                               Supervising Deputy Attorney General
                               *Attorneys for Plaintiffs and Appellants*

41

## CIRCUIT RULE 25-5(E) ATTESTATION

I certify that all other parties on whose behalf this filing is submitted

concur in the filing's content.

Dated:  July 16, 2018                    Respectfully Submitted,

                                         XAVIER BECERRA
                                         Attorney General of California


                                         s/MICHAEL P. CAYABAN
                                         MICHAEL P. CAYABAN
                                         Supervising Deputy Attorney General
                                         *Attorneys for Plaintiffs and Appellants*

42

## CERTIFICATE OF COMPLIANCE

This brief complies with the longer length limit authorized by court order dated April 26, 2018. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is 8,477 words, excluding portions exempted by Fed. R. App. P. 32(f).

Dated: July 16, 2018    Respectfully Submitted,

XAVIER BECERRA
Attorney General of California


s/MICHAEL P. CAYABAN
MICHAEL P. CAYABAN
Supervising Deputy Attorney General
*Attorneys for Plaintiffs and Appellants*

43

9th Circuit Case Number(s) | 18-55474; 18-55475; 18-55476

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) July 16, 2018 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/Janelle M. Smith

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)